LINCOLN SQUARE CORPORATION *v.* MOTOR CITY PAPER TUBE COMPANY.

1. LANDLORD AND TENANT—COVENANT TO REPAIR—FIRE.
   Provisions of lease of multiple-story building to defendant for its occupancy and use as a manufacturer of paper tubes and products whereby the tenant was to keep the premises free from rubbish, comply with orders of municipal authorities affecting the cleanliness, use and safety of the premises and keep the premises in as good repair and deliver them up in like condition as when taken, reasonable use and wear and damage by the elements excepted were intended to apply to defendant's occupancy of a tenantable building and not to a situation in which a fire had converted the tenant's personal property into debris and rendered the premises untenantable.

2. SAME—FIRE—REMOVAL OF MACHINERY—DEBRIS—ESTOPPEL.
   Lessee's removal of machinery and personal belongings after a fire did not estop lessee from denying responsibility for removal of debris 95% of which was its burned personal property.

---

REFERENCES FOR POINTS IN HEADNOTES

[3] 32 Am Jur, Landlord and Tenant § 128.
[5] 32 Am Jur, Landlord and Tenant § 502.
Condition of premises within contemplation of provision of lease or statute for cessation of rent or termination of lease in event of destruction of or damage to property as result of fire. 118 ALR 106.
[6] 32 Am Jur, Landlord and Tenant § 531.
[7] 32 Am Jur, Landlord and Tenant § 507.

3. SAME—AMBIGUITY—CONSTRUCTION OF A LEASE.

Provisions of a lease must be construed against the landlord when they leave questions in doubt.

4. SAME—FIRE—REMOVAL OF DEBRIS—CONSTRUCTION OF LEASE.

The lease by a lessor of a multiple-story building leased to lessee for a factory and which lessor agreed to repair in the event of a fire is construed as requiring the lessor to remove the debris as incident to the duty to repair, where the lease itself is silent as to such removal; hence, lessor was not entitled to recover cost of removal of debris which was 95% burned personal property of the lessee.

5. SAME—FIRES—REPAIRS—ABATEMENT    OF    RENT—EXCEPTIONS— EVIDENCE.

Plaintiff lessor was not entitled to rent for 5–1/2-month period during which premises were being repaired after fire, where lease provided that rent should abate during period of repairs and finding of trial judge that fire did not result from the negligence of defendant lessee is not against the preponderance of the evidence, hence, liability could not be imposed for rent under clause excepting abatement in event fire resulted from lessee's negligence.

6. SAME—FIRES—ABATEMENT OF RENT—EXCEPTIONS—BURDEN OF PROOF.

The lessor has the burden of proving facts bringing liability for rent upon part of lessee within exception to general rule provided by lease that in the event premises become untenantable the rent should abate, the exception being that in event fire rendering premises untenantable was due to the lessee's negligence the rent should not abate.

7. SAME—FIRE—LIABILITY OF TENANT FOR RENT—DELAY IN RE- MOVAL OF MACHINERY—LEASE TO ANOTHER TENANT.

Lessee under written lease of multiple-story building leased to it, which required lessor to repair the building in the event of fire *held*, liable for rent at rate prescribed in the lease until it commenced removal of its machinery, where such removal was shown to have been necessary to the repair of the building after a fire, and was also liable for rent from time premises were rendered tenantable until lessor secured another tenant.

Appeal from Wayne; Webster (Clyde I.), J.  Submitted April 9, 1954.  (Docket No. 52, Calendar No. 46,109.)  Denied June 7, 1954.  Rehearing denied September 8, 1954.

Action by Lincoln Square Corporation, a Michigan corporation, against Motor City Paper Tube Company, a Michigan corporation, for rentals on lease following extensive damage to building by fire. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Friedman, Meyers & Keys* (*Donald E. Barris* and *Herbert Sott,* of counsel), for plaintiff.

*Goetz & Goetz,* for defendant.

DETHMERS, J.  Plaintiff owned and leased a multiple story building to defendant for its occupancy and use as a manufacturer of paper tubes and products. For that purpose defendant had on the premises a quantity of machinery, huge rolls of paper and other personal property.  Fire rendered the building untenantable and converted much of defendant's personal property, other than machinery, into debris. The lease provided that, in the event of such destruction of the premises by fire, plaintiff would repair and restore same to tenantable condition with reasonable dispatch, the rent to abate until thus restored. After the fire plaintiff took the position that the rent did not abate and that plaintiff was not required to commence repairing until defendant made the latter possible by removal of its machinery and the debris, 95% of which consisted of defendant's burned personal property and 5% of burned wood of the building.  Twelve days after the fire the city department of building and safety engineering sent both parties a notice ordering removal of all equipment, machines and material.  Sixteen days after the fire plaintiff sent defendant a written request to remove the contents of the building so that repairs could be made. Two days later defendant made written reply declaring the lease terminated for failure of plaintiff to

commence repairs and demanding that the building be put in safe condition to enable defendant to remove its machinery. Six days thereafter plaintiff again wrote defendant advising that it considered the lease still in effect and demanding defendant's removal of the contents to permit such repairs. After another 2 days plaintiff again wrote defendant advising that unless the latter removed the contents within 4 days plaintiff would remove and store the same at defendant's expense. Defendant replied 3 days later that it would remove its machinery as soon as plaintiff made the premises safe for that purpose and cautioned that plaintiff was not authorized to handle defendant's machinery or incur any expenditure on defendant's behalf. Twenty-two days after the last-mentioned letter, being 7 weeks and 2 days after the fire, defendant commenced, and within the next 10 days completed, removal of its machinery and then mailed keys to the building to plaintiff. Thereafter plaintiff removed the debris and proceeded to make the necessary repairs to the building, which were completed in approximately 6 months. After completion, defendant declined to reoccupy the premises or pay rent under the lease and a year or more elapsed before plaintiff was able to obtain a tenant.

Plaintiff sued to recover the net cost to it for removal of the debris, consisting of defendant's burned personal property, in the amount of $5,303.88, and also for rent at the lease-prescribed rate of $600 per month, itemized as follows: $900 due until date defendant had completed removal of its machinery; $3,300 for a 5-1/2-month period extending from the last mentioned date until the alleged date of completion of repairs to the premises; and $7,800 for a claimed 13-month period after completion of the repairs, during which plaintiff was unable to obtain a tenant. The total of plaintiff's claim is, therefore,

$17,303.88. From a judgment of no cause for action, entered after trial by the judge without a jury, plaintiff appeals.

Was it defendant's duty to remove its debris? Plaintiff says it was, finding support for its position in *Boardman* v. *Howard,* 90 Minn 273 (96 NW 84, 64 LRA 648) ; and *Sumna Realty Co.* v. *Capital Chair Co.,* 9 NJ Misc 337 (153 A 701). Defendant says that the duty rested on plaintiff, citing 2 New York decisions, *Fleischman* v. *Toplitz,* 134 NY 349 (31 NE 1089); and *Packard Motor Car Co.* v. *American Balsa Wood Corp.,* 252 NY 174 (169 NE 129). Although plaintiff theorizes that the former New York case supports its position and that the latter is distinguishable on the facts and applicable New York statute, we think its theory in that regard farfetched and consider defendant's reliance thereon well founded. The question is a novel one in Michigan. Reference is made to *Barbour* v. *Waterston,* 276 Mich 304, but it is not decisive of the question here. There is no pertinent Michigan statute. Applicable provisions of the lease, if any, must be given effect. Plaintiff stresses the lease's paragraphs 15, 18 and 19, which provide, respectively, that defendant shall (1) keep the premises free from rubbish, (2) comply with the orders of municipal authorities affecting the cleanliness, use and safety of the premises, and (3) keep the premises in as good repair and, at the expiration of the lease, deliver up the same in like condition as when taken, reasonable use and wear and damage by the elements excepted. A reading of the entire lease, and these 3 paragraphs in particular, makes it manifest that they were intended to apply to defendant's occupancy of a tenantable building and not to a situation in which a fire, which converted defendant's personal property into debris, rendered the premises untenantable. They have no application to the question at issue. Nor are we im-

pressed by plaintiff's argument that defendant's removal of machinery and personal belongings after a fire which occurred 5 years earlier worked an estoppel against defendant's right to deny responsibility for removal of debris in the instant case. The lease failed to specify which party should remove the debris. When the provisions of a lease leave questions in doubt, they must be construed against the landlord. 51 CJS, Landlord and Tenant, § 232. The lease did specifically require plaintiff to repair the premises and restore it to a tenantable condition. Necessary and incidental to that duty was the removal of debris. That was part of the burden plaintiff assumed in agreeing to repair in case of fire. 1 Rasch's New York Law of Landlord and Tenant and Summary Proceedings (1950 ed), § 787; *Fleischman, supra,* and *Packard, supra.* Consequently, it must be held that plaintiff is not entitled to recover the $5,303.88 expended for removal of debris.

Is plaintiff entitled to recover the $3,300 rental item claimed for the alleged 5–1/2-month period during which the premises were being repaired? Paragraph 12 of the lease provides that rent shall abate during such period. Plaintiff relies, however, on that paragraph's subsequent proviso that there shall be no such abatement of rental, if the fire shall result from the negligence of defendant. The trial court found as a fact that the fire occurred without fault of defendant. The evidence does not clearly preponderate the other way. Plaintiff contends, however, that defendant failed to show its freedom from negligence and that the burden of proof in that regard rested on defendant, citing *Chausmer* v. *Arons,* 7 NJ Misc 612 (146 A 674), and *Colonial Land Co.* v. *Asmus,* 80 NJL 637 (77 A 1022). Involved in those cases was a New Jersey statute which provides that whenever a leased building shall be injured by fire without fault of the lessee, the landlord shall

speedily repair, or in default thereof, the rent shall cease until the building is repaired. There the duty to pay was the general rule and abatement the exception. The lessee being obligated to pay rent in the first instance, the New Jersey court held that the burden rested upon him to show that the condition of the statute had occurred excusing him from payment. In the instant case, on the contrary, the lease provided, in the first instance, that rent shall abate while the premises are untenantable, following which an exception to such abatement was expressed if the damage to the premises was caused by lessee's negligence. Here, abatement of rent after the premises became untenantable was the general rule and the requirement to pay in case of lessee's negligence was the exception. The plaintiff, in claiming the benefit of the exception, must bear the burden of proving facts bringing his case within that exception. *Paton* v. *Coit,* 5 Mich 505 (72 Am Dec 58), and *Niles* v. *Rhodes,* 7 Mich 374, 382. Plaintiff is, accordingly, not entitled to recover rent for the period during which repairs were being made to the premises.

Was plaintiff guilty, as claimed by defendant, of a breach of its duty, under paragraph 12 of the lease, to repair the building with reasonable dispatch, thereby entitling defendant to declare the lease terminated and absolve itself from liability for further payment of rent after the building was restored to tenantability? CL 1948, § 554.201 (Stat Ann § 26.-1121), provides that where a rented building is so injured as to render it untenantable, and *no express agreement to the contrary* has been made in writing, the lessee may, if the injury is not due to his fault, surrender possession and escape further liability for rent. Defendant concedes that the noted provision of paragraph 12 of the lease constitutes an *"express agreement to the contrary,"* referred to in the statute, and so it clearly does. But defendant

urges that plaintiff, if it is to avail itself of the benefits of such agreement, must comply with its requirement to proceed to repair with dispatch. Defendant cites *Barbour* v. *Waterston, supra,* as authority for its contention that plaintiff did not, under the facts of this case, proceed with dispatch and that its delay in commencing the repairs was unreasonable, justifying defendant's termination of the lease. Plaintiff, in turn, insists that it did not voluntarily breach the terms of the lease, but was delayed in performance by defendant's failure to perform its duty to remove its debris and machinery. Plaintiff cites for the proposition that defendant cannot take advantage of a failure of plaintiff to perform within a reasonable time if caused by defendant's own breach of duty the following: *Milks* v. *Milks,* 129 Mich 164; *Stimpson* v. *Freeman,* 38 Mich 314; *McCreery* v. *Green,* 38 Mich 172; and *Fredenburg* v. *Turner,* 37 Mich 402, 406. This brings us necessarily to a consideration of whether it was the duty of defendant to remove its debris and such of its machinery as was salvageable or had a value after the fire if necessary in order to enable plaintiff to repair the building. We have already pointed out that defendant was under no such duty as to debris. What of machinery of the character described? We think *Sumna Realty Co.* v. *Capital Chair Co., supra,* fairly supports plaintiff's contention that it was defendant's duty to remove such machinery. And with good reason, for plaintiff had no right, under the terms of the lease or otherwise, to handle or do anything with personal property of value, as distinguished from debris, belonging to defendant, was in danger of incurring liability for any mishandling which might occur, and had been cautioned by defendant that it was not authorized to handle the same or to make any expenditures in that connection in defendant's behalf. Defendant alone

had the right to handle, and the duty to remove, the machinery, if necessary. Defendant does not contend, nor did the trial court hold, that defendant was not obligated to remove its machinery, if necessary to the repairing of the building and safe to do so. Rather, the court appears to have found that the necessity for such removal did not and could not have occurred until after plaintiff first removed the debris; defendant agrees and contends, further, that repairs to the building could have been made without removal of the machinery, that the condition of the premises rendered such removal unsafe, and that it was plaintiff's duty to make the building safe for that purpose before defendant was required to remove the machinery. In these respects there is a conflict and confusion of testimony. We think, however, that it clearly preponderates in favor of plaintiff's contention, (1) that removal of the machinery was necessary before repairs could be made, and (2) that such removal could have been and ultimately was made by defendant without the necessity for shoring up any of the walls or taking of any preliminary steps to render the premises safe for that purpose, except for the few minor things naturally incident to the moving of heavy machinery, which the man in charge of removing it testified actually was done in connection therewith, namely the temporary placing of boards over holes in the floor across which the machinery was to be moved and the placing of certain temporary braces to sustain the weight thereof. Accordingly, we hold that under the facts of this case it was the duty of defendant to remove its machinery as a condition precedent to plaintiff's duty to repair the premises. Consequently, plaintiff was not guilty of an unreasonable delay in making repairs, defendant was not justified in declaring the lease terminated, and, under its terms, defendant remained liable for rent commencing with

the date when the premises were restored to a tenantable condition. Plaintiff having been delayed in making repairs by defendant's breach of duty, the time when the premises were restored to a tenantable condition was correspondingly delayed through the fault of defendant. It follows that plaintiff is entitled to recover rent for the period of that delay; that is to say, all rent due and unpaid up to the time when defendant commenced removing its machinery. From the time defendant started removal of its machinery until the date when the premises were restored to a tenantable condition the rent must be held, under the terms of the lease, to have abated. When the premises became tenantable once more abatement of the rent ceased and defendant's obligation to pay revived. For the period commencing at that date and continuing until the time when plaintiff was able to secure a tenant defendant is obligated to pay rent at the rate prescribed by the lease. The trial court did not determine and the record before us does not clearly disclose the amount of rent due up to the time defendant began removing machinery and for the period subsequent to completion of repairs, particularly because the date of the latter event appears to be in dispute. Determination of these 2 items should be made by the trial court.

Judgment of no cause for action in favor of defendant is reversed and the cause remanded for determination in accord herewith and entry of judgment for plaintiff accordingly, with costs to plaintiff.

Butzel, C. J., and Carr, Bushnell, Sharpe, Boyles, Reid, and Kelly, JJ., concurred.